Argued and submitted May 11, affirmed August 29, 2007

EAST COUNTY RECYCLING, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

PNEUMATIC CONSTRUCTION, INC.,
an assumed business name of
PCI Mechanical Construction;
Pneumatic Construction, Inc.,
an assumed business name of
PCI Waste and Recycling Systems and
Recycling Equipment Manufacturing, Inc.,
a foreign corporation,
*Defendants,*

*and*

INTERNATIONAL BALER CORPORATION,
a foreign corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
050302879; A132002

167 P3d 464

574

Brooks F. Cooper argued the cause and filed the briefs for appellant.

Beth Cupani argued the cause for respondent. With her on the brief were R. Daniel Lindahl and Bullivant Houser Bailey PC.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.

BREWER, C. J.

574-b

## BREWER, C. J.

This is an action for breach of an express warranty involving the sale of a baling machine. ORS 72.3130. Plaintiff appeals a summary judgment for defendant International Baler Corporation (IBC). The primary issue on appeal is whether the trial court erred in striking portions of plaintiff's representative's affidavit in opposition to summary judgment, in which the affiant asserted that an unidentified IBC representative made a warranty regarding the baler. Because plaintiff did not establish an adequate foundation to demonstrate that the stricken evidence was admissible to establish a fact that had legal significance apart from its truth, the trial court did not err in striking the evidence. Further, because plaintiff adduced no other evidence that IBC made the asserted warranty, the trial court did not err in granting IBC's motion for summary judgment. Accordingly, we affirm.

We view the record in the light most favorable to plaintiff, the nonmoving party. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Plaintiff is a corporation that recycles garbage and other waste. IBC manufactures baling machines that compress and form cardboard and other waste into uniformly sized bales for shipping and recycling. Defendant Pneumatic Construction, Inc. (PCI), is a local sales distributor for IBC baling machines.

In late 2003, plaintiff wanted to buy a material baler for use in expanding its business. Plaintiff wanted a baler with certain characteristics, including the ability to function outdoors in Oregon weather. PCI submitted a bid to supply the baler and associated equipment. Gilbert, a principal officer and shareholder of plaintiff, negotiated with PCI for the purchase. In his affidavit in opposition to summary judgment, Gilbert stated:

"I was [plaintiff's] representative who was primarily involved in the investigation and negotiation for the purchase of the baler at issue in this lawsuit. Before [plaintiff] purchased the baler at issue, I had a conversation on the telephone with a representative of [IBC]. * * * During the call, I expressed my concern that the baler needed to be able to work outside, and made it clear to the IBC representative

that I would only purchase the baler if it was able to work outside effectively and at its rated capacity. The representative assured me that the baler could be operated outside in the weather with the purchase of a moisture-proofing option. In other words, I was assured that the baler was appropriate for use in an outdoor environment. I therefore purchased the moisture-proofing option and the baler. I relied upon IBC's representations when deciding to purchase the baler for [plaintiff]."

Plaintiff installed the baler and began operating it on August 5, 2004. Plaintiff was not satisfied with the operation of the baler, and it voiced its dissatisfaction to IBC and PCI. During the months following the installation of the machine, IBC, through a representative, told plaintiff that the baler was unsuitable for outdoor operation.

Plaintiff then brought this action against PCI and IBC.[1] Plaintiff's claim against IBC was for breach of an express warranty based on the telephone conversation between Gilbert and the unidentified representative of IBC that Gilbert described in his affidavit. IBC filed a motion for summary judgment in which it asserted that there was no evidence that IBC ever made the alleged representation to plaintiff and that, even if it did, the alleged representation did not qualify as an actionable warranty because it was a mere "opinion or commendation of the goods." In support of the motion, IBC submitted affidavits from its vice president of sales and marketing and its regional sales manager. Both affiants averred that they were the only IBC representatives who, before the sale, had communicated with plaintiff or PCI regarding the baler and that they had not made the alleged representation to plaintiff.

Plaintiff filed a response to the summary judgment motion in which it asserted that, based on Gilbert's accompanying affidavit, a material fact question existed concerning whether IBC made an actionable warranty. In reply to plaintiff's response, IBC filed a motion to strike the portions of Gilbert's affidavit that referred to his conversation with

---

[1] Plaintiff's claims against PCI are not at issue on appeal. Other defendants also were named in the action, but those defendants likewise are not parties on appeal.

the unidentified IBC representative. In support of the motion to strike, IBC argued that, because Gilbert's affidavit did "not identify the name of the alleged declarant, the job title or alleged responsibilities of that individual, or the dates on which the alleged calls occurred," the challenged statements constituted inadmissible hearsay not subject to OEC 801(4)(b)(D).[2]

The trial court granted IBC's motion to strike on the ground that the challenged portions of Gilbert's affidavit were "inadmissible hearsay not subject to the exception set forth in OEC 801(4)(b)(D), or any other hearsay exception." In addition, the court granted IBC's summary judgment motion on the ground that plaintiff had "presented no admissible evidence supporting the creation of an express warranty between the parties to this motion." Plaintiff appeals from the ensuing limited judgment in favor of IBC.

In a nutshell, plaintiff argues that the trial court erred in analyzing the issue on summary judgment as a hearsay problem that implicated OEC 801(4)(b)(D). According to plaintiff, Gilbert's recital of the conversation with the IBC representative constituted evidence of IBC's "verbal act," namely, the creation of an express warranty, that was not hearsay and, accordingly, need not qualify as an admission under OEC 801(4)(b)(D) in order to be admissible.

Before we address the merits of that argument, we must consider IBC's assertion that plaintiff has failed to demonstrate that its argument was preserved, because plaintiff failed to designate the oral argument on IBC's summary judgment motion as part of the record on appeal, and plaintiff failed to file a written response to IBC's motion to strike. IBC relies on our decision in *Russell v. Nikon, Inc.*, 207 Or App 266, 140 P3d 1179, *adh'd to as clarified on recons*, 208 Or App

---

[2] OEC 801 provides, in part:

"(4)  A statement is not hearsay if:

"* * * * *

"(b)  The statement is offered against a party and is:

"* * * * *

"(D)  A statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]"

606, 145 P3d 312 (2006), *rev den*, 342 Or 299 (2007), where we dismissed an appeal on the ground that, in the absence of a transcript of an attorney fee hearing, we were unable to adequately review the appellant's assignment of error concerning the sufficiency of the evidence to support the trial court's decision.

■     The Supreme Court has explained that, in order to preserve an assignment of error for appeal, "it is essential to raise the relevant issue at trial, but less important to make a specific argument or identify a specific legal source with respect to the issue raised." *State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998); *see also State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (setting forth the issue-source-argument preservation hierarchy). In determining whether an assignment of error is preserved, the most significant question is whether the trial court had a realistic opportunity to make the right decision. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.").

■     We conclude from the record before us that plaintiff's assignment of error was adequately preserved. In order to explain our conclusion, it is necessary to discuss some of the substantive legal principles that govern the merits of the parties' arguments on appeal; that is, to some extent the preservation analysis is bound up with the merits of the case. In its written response to the summary judgment motion, plaintiff relied on Gilbert's affidavit, arguing that IBC's representative had made the representation described in the affidavit. In the context of Gilbert's affidavit, plaintiff then discussed this court's decision in *Larrison v. Moving Floors, Inc.*, 127 Or App 720, 873 P2d 1092 (1994), where we set out the requirements for a claim for breach of an express warranty under ORS 72.3130.[3] Those requirements—which plaintiff set out

---

[3] ORS 72.3130 provides:

  "(1) Express warranties by the seller are created as follows:

  "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates

in its written response—are that there must be an affirmation of fact that relates to the goods or a description of the goods by the seller, and the factual affirmation or description must be the basis of the parties' bargain. *See, e.g., Autzen v. Taylor Lumber Sales, Inc.*, 280 Or 783, 788, 572 P2d 1322 (1977).

From that discussion, it is readily apparent that plaintiff contended that the representation made by IBC's representative qualified as an actionable express warranty because it was an affirmation relating to the baler that constituted a basis of the parties' bargain. Even though plaintiff did not expressly say so in its written response, and there was no reason to do so at that time, that argument was sufficient to meet IBC's *later* argument that the statement was inadmissible hearsay.

Some statements are themselves evidence of significant legal facts; the substantive law attaches certain consequences to such utterances so that the mere making of the statement becomes an issue in the case. *Hickey v. Settlemier*, 318 Or 196, 204, 864 P2d 372 (1993). Such out-of-court statements are not offered for the truth of what they state and, under longstanding common-law principles, are not hearsay.[4] *Id.* Evidence of actionable representations or the terms of a contract falls into the category of operative facts with legal significance apart from their truth. Laird C. Kirkpatrick, *Oregon Evidence* § 801.01[3][d], Art VIII-10 (4th ed 2002); *cf. Holmes v. Morgan*, 135 Or App 617, 626, 899 P2d 738,

---

an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

[4] Such statements are sometimes classified as "verbal acts." *Hryciuk v. Robinson,* 213 Or 542, 566, 326 P2d 424 (1958).

*rev den*, 322 Or 193 (1995) (witness testifying to contract was "neither a party to the agreement nor one who heard the parties make the agreement"; instead, she was relying on an out-of-court statement of another, which is hearsay).

The assertion that the IBC representative's affirmation was a basis of the parties' bargain lay at the very heart of plaintiff's response to IBC's summary judgment motion. That assertion is a logical corollary of—if not essentially identical to—the argument that the affirmation was evidence of a fact of legal significance apart from its truth. It is apparent that the trial court understood that the problem could not be analyzed solely under OEC 801(4)(b)(D), because the court alternatively determined that the challenged evidence was not admissible under "any other hearsay exception." We conclude that plaintiff was not required to file a further written response to IBC's ensuing motion to strike or demonstrate that it made a particular oral argument to preserve the argument that the challenged evidence established a fact of legal significance apart from its truth. Unlike in *Russell*, where the issue on appeal was what occurred at an evidentiary hearing, we need not resort to the transcript of the parties' arguments on the summary judgment motion to be satisfied that plaintiff's argument was adequately preserved.

■ We turn to the merits of plaintiff's argument. As discussed, plaintiff correctly asserts that the admissibility of the IBC representative's statements does not depend on whether the statements qualified as admissions under OEC 801(4)(b)(D). IBC does not dispute that proposition on appeal. Instead, IBC argues, as the trial court alternatively concluded, that the challenged statements were inadmissible because plaintiff did not establish an adequate foundation for their admissibility under *any* nonhearsay theory. IBC asserts that, even though OEC 801(4)(b)(D) is not directly applicable to the issue at hand, its foundational requirements also apply to the admissibility of a reputed agent's statements that, if authorized, would evidence the making of a contract or warranty on behalf of the agent's principal.

IBC relies on our decision in *Andrews v. R.W. Hays Co.*, 166 Or App 494, 998 P2d 774 (2000). In that case, we

held that a statement that was allegedly made by an unidentified employee of the defendant failed to qualify as an admission under OEC 801(4)(b)(D), which was the sole basis for admission of the evidence on which the plaintiff relied. We set out our discussion in detail:

> "Defendants contend that plaintiff's affidavit fails to establish the foundational requisites for admission under that exception. Most simply, defendants argue, it is impossible to determine whether a statement 'concern[ed] a matter' within the declarant's scope of employment without knowing who the declarant was or, at least, the nature of his or her job:

> "* * * * *

> "Defendants are correct. Proof of a declarant's job title or responsibilities is essential to establishing admissibility under OEC 801(4)(b)(D). Although no Oregon reported decision directly addresses this issue, opinions from other jurisdictions are instructive and persuasive. *See, e.g., State v. Cornell,* 109 Or App 396, 400, 820 P2d 11 (1991), *aff'd* 314 Or 673, 842 P2d 394 (1992) (because OEC 801 is derived from Federal Rules of Evidence 801, 'we may look to federal cases applying the federal rule as interpretive guides').

> "*Thomas v. Stone Container Corp.,* 922 F Supp 950 (SDNY 1996), is exemplary. There, the corporate defendant moved for summary judgment in an occupational personal injury case, and plaintiff, in opposing that motion, submitted an affidavit in which he stated that one of the defendant's employees had told him that the defendant lacked certain equipment. The affidavit did not identify the employee by name or job title. The court held that, under FRCP 56(e), the federal analog to ORCP 47 D, the alleged statement must be disregarded:

> > " 'Such a statement would be classic hearsay and therefore not appropriately considered on this motion. It would not be removed from that category by Fed. R. Evid. 801(d)(2)(B) or (C). As the speaker is unidentified, even by job function, there is no evidence that the alleged statement was made by a person authorized to make it or that it concerned a matter within the scope of the declarant's employment.' 922 F Supp at 957 (citation omitted).

"*Ruggiero v. Standard Management,* No. 95APE05-641, 1995 WL 771439 (Ohio App) (December 19, 1995), is similar. There, the plaintiff brought a personal injury action against the defendants, including an athletic club, for a severe back injury he incurred after his foot 'stuck' as he played basketball on a carpeted floor. Defendants moved for summary judgment. In opposing that motion, the plaintiff submitted affidavits from two acquaintances who had witnessed the accident. Those affidavits stated that, after the accident, two employees of the athletic club had commented that the installation of the carpeted floor had resulted in many more injuries from playing basketball. As in *Thomas*—and in this case—the affidavits did not name the declarants or describe the nature of their job. The defendants objected to those affidavits, and the trial court, after striking the affidavits, granted summary judgment.

"In reviewing the allowance of summary judgment, the Ohio Court of Appeals held that the alleged employee statements were inadmissible under Ohio Civil Rule 56(E), which, like ORCP 47 D, requires that summary judgment affidavits set forth 'such facts as would be admissible in evidence.' In particular, the court concluded that the affidavits failed to establish admissibility under Ohio Evidence Rule 801(D)(2)(d), which is identical to OEC 801(4)(b)(D). *See also Blackburn v. United Parcel Service, Inc.*, 179 F3d 81, 97-98 (3d Cir 1999) (alleged admission by named employee of the defendant was not admissible under FRE 801(d)(2)(D) where declarant's 'position is not identified * * * and there is no indication that the statement was made concerning a matter within the scope of [declarant's] agency or employment').

"We thus conclude that plaintiff's proffered evidence of prior similar accidents is properly disregarded in determining the propriety of summary judgment."

*Andrews*, 166 Or App at 500-02 (footnotes omitted).

*Andrews* does not, in and of itself, dispose of plaintiff's argument because, in that case, we construed a particular provision of the Oregon Evidence Code using a statutory construction methodology that is inapplicable here. Nothing in the Oregon Evidence Code directly speaks to the issue at hand. Instead, as discussed, evidence of facts of legal significance apart from their truth is excluded from the definition of

hearsay under longstanding common-law principles. That derivation requires us to examine ordinary agency principles to determine whether plaintiff demonstrated that evidence of the conversation between Gilbert and the unidentified representative was admissible for a nonhearsay purpose. In that regard, as we now explain, the common-law rule is consonant with the analysis under OEC 801(4)(b)(D).

■        An express warranty is contractual in nature; it must be made by someone with authority to bind the warrantor. *See, e.g., Jorritsma v. Farmers' Feed & Supply*, 272 Or 499, 506, 538 P2d 61 (1975). An agency relationship "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Rough & Ready Lumber v. Blue Sky Forest Products*, 105 Or App 227, 231, 804 P2d 498 (1991) (quoting *Restatement (Second) Agency* § 1 (1958)). Actual authority may be evidenced by an express agreement or implied from the circumstances and conduct of the parties; in both circumstances, however, the principal's consent is essential. *Id.* Apparent authority also turns on the conduct of the principal. Apparent authority can be created only by some conduct of the principal [that], when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter. *Jones v. Nunley*, 274 Or 591, 595, 547 P2d 616 (1976).

■        Although neither we nor the parties have found an Oregon case that is directly on point, the uniform rule appears to be that, where an employee is not identified by name or responsibilities, the employee's declaration is inadmissible as a declaration on behalf of the employer unless, from the circumstances of the declaration, it is possible to infer that it concerns a matter that is within the scope of the employee's authority. *See, e.g., Ryder v. Westinghouse Elec. Corp.*, 128 F 3d 128, 134 (3rd Cir 1997), *cert den*, 522 US 1116 (1998); *Evans v. Port Authority of New York and New Jersey*, 192 F Supp 2d 247, 264-65 n 129 (SDNY 2002); *Chaney v. Winn Dixie Stores, Inc.*, 605 So 2d 527, 529-30 (Fla App 2d Dist 1992); *Shreves v. Meridia Health Systems*, 2006 WL 3095669 (Ohio App Nov 2, 2006); *Pascarella v. Sears, Roebuck and Co.*, 720 NYS2d 461, 461-62 (2001).

The principal difficulty with concluding that plaintiff's evidence satisfied the requirements for showing that the IBC representative had actual or apparent authority to make the asserted contractual representation is that there was no evidence of the person's identity or job responsibilities. To compound matters, there was no evidence as to how and in what context Gilbert communicated with the person so that it might be inferred circumstantially that the person acted within the scope of his authority in making the representation. Plaintiff's remonstrance that, "[a]s to the question at issue on this appeal—admissibility—[IBC] has provided no support for its argument that a verbal act is *inadmissible* on these facts," misses the point that it was plaintiff's responsibility to provide an adequate foundation for the admission of the evidence. (Emphasis in original.) On the record before us, there are simply too many gaps in the foundation to permit an inference that the requisite authority—either actual or apparent—existed. In sum, plaintiff failed to demonstrate that the evidence was admissible for a nonhearsay purpose.

Accordingly, the trial court did not err in striking the challenged evidence. Because plaintiff proffered no other evidence that IBC made the asserted representation, it also follows that the trial court did not err in granting IBC's motion for summary judgment.[5]

Affirmed.

---

[5] Plaintiff does not assert that any of the evidence adduced by IBC sufficed to create an inference that either IBC's vice president of sales and marketing or its regional sales manager made the asserted representation.